**FILED**

Jeanne A. Naughton, CLERK

**JULY 15, 2022**

United States Bankruptcy Court
Newark, NJ

By: ___*Juan Filgueiras*_____

Juan Filgueiras, Court Room Deputy

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
| In Re:<br><br>INSUK CHO,<br><br><div align="right">Debtor.</div> | Case No.:    18-33652 VFP<br><br>Chapter:    7<br><br>Judge:    Vincent F. Papalia |
| BIN HAN and NAM YOON,<br><br><div align="right">Plaintiffs,</div>v.<br><br>INSUK CHO,<br><br><div align="right">Defendant.</div> | Adv. Pro. No.  19-1978  VFP |

## OPINION AFTER TRIAL

**APPEARANCES**:

NAM YOON
joanna_yoon@icloud.com
BIN HAN
matsuyama88@hotmail.com
4155 Glenwood Street
Little Neck, NY  11363
Plaintiffs *Pro Se*

INSUK CHO
stellacho240@gmail.com
190 River Road
Apt. 1407
Edgewater, NJ  07020
Defendant *Pro Se*

**VINCENT F. PAPALIA, Bankruptcy Judge**

## I.    INTRODUCTION

This is the Opinion after the trial that the Court conducted on April 20, 2022 on the Adversary Complaint (the "Complaint") filed on May 24, 2019 by *pro se* plaintiffs Mr. Bin Han ("Mr. Han") and Ms. Nam Yoon ("Ms. Yoon") (collectively, the "Plaintiffs") against *pro se* Debtor-defendant Ms. Insuk Cho (the "Debtor") on a sequence of less than clear and often inconsistent claims and allegations.  Primarily, Plaintiffs sought to except from discharge under 11 U.S.C. § 523(a)(2) a debt owed to Ms. Yoon by Debtor in the amount of $50,000.  Initially, Plaintiffs also appeared to seek to deny or revoke Debtor's discharge under 11 U.S.C. § 727(a) or (d), without citing a specific subsection, but did not press that claim at trial and, in any event, failed to provide sufficient evidence to support such a claim.[1]  For the reasons set forth below, the Court will dismiss Plaintiffs' claims to: (i) except the $50,000 debt from discharge under 11 U.S.C. § 523(a)(2)(A); and (ii) deny or revoke Debtor's discharge under 11 U.S.C. § 727(a) or (d).

## II.    JURISDICTIONAL STATEMENT

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the Standing Orders of Reference entered by the United States District Court on July 10, 1984 and amended on September 18, 2012.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I) [dischargeability of particular debts], (J) [objection to discharge] and (O).  Venue is proper in this Court under 28 U.S.C. § 1408.  The Court issues the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. To the extent that any of the findings of fact might

---

[1] Plaintiffs checked numerous boxes on their adversary proceeding cover sheet, invoking claims for turnover of property, fraudulent transfer, determining validity, priority and extent of lien and "revocation of confirmation" but meaningfully pursued only an 11 U.S.C. § 523(a)(2) claim and, to a lesser extent an 11 U.S.C. § 727(a) or (d) claim, which Plaintiffs raised on a one-page, June 7, 2019 submission, entitled "Support Document – Complaint to Deny Discharge," that purported to be part of the Complaint.  Adv. Pro. Cover Sheet, Dkt. No. 1; June 7, 2019 Support Document, Dkt. No. 6.

constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

## III.    STATEMENT OF RELEVANT PROCEDURE AND FACTS

### A.    The Bankruptcy Case and Adversary Proceeding

The Debtor, through counsel Hyung S. Kim, Esq., filed her voluntary, no-asset Chapter 7 case on November 30, 2018.  She initially filed only eight pages of the petition (without any schedules) but included Ms. Yoon as one of four creditors on the Mailing List.[2]  Debtor completed her schedules on December 7, 2018 and amended them on February 20, 2019, in both instances scheduling Ms. Yoon as a general unsecured creditor for $50,000.[3]  Chapter 7 Trustee Barbara A. Edwards, Esq., conducted the creditors' meeting on February 22, 2019 and filed a Report of No Distribution on March 5, 2019.  That same date was also the deadline for filing a complaint to except a debt from discharge or to deny the Debtor's discharge.[4]  No complaint was filed by that date, and the Debtor received her discharge on March 8, 2019.

Mr. Han and Ms. Yoon filed an application in the form of a motion to except Ms. Yoon's $50,000 debt from discharge on April 1, 2019, which was after the March 5, 2019 deadline for filing such claims.[5]  Over Debtor's objection, and noting that Plaintiffs were proceeding *pro se* and that there were service issues related to the addresses for Plaintiffs, the Court treated the Plaintiffs' motion as one to toll and extend the deadline for filing a complaint and entered an April 18, 2019 Order granting Plaintiffs through May 24, 2019 to file a complaint to except the $50,000 debt from discharge or to revoke the Debtor's discharge.[6]  The Plaintiffs filed an Adversary

---

[2] Nov. 3, 2018 Pet., Main Dkt. No. 1.
[3] Dec. 7, 2018 Scheds., Main Dkt. No. 7; Feb. 20, 2019 Scheds., Main Dkt. No. 14.
[4] Mr. Han testified at trial that Ms. Yoon and he attempted to attend the meeting of creditors but indicates that Debtor maneuvered around them and told the Trustee that they were not present.  Apr. 20, 2022 Trial Tr. 58:7-17, Dkt. No. 62.
[5] Apr. 1, 2019 Mot., Main Dkt. No. 21.
[6] Apr. 18, 2019 Order, Main Dkt. No. 29.

Proceeding Cover Sheet on May 24, 2019 (without a complaint) and docketed various documents

containing elements of a Complaint and Exhibits from May 28, 2019 through June 26, 2019.[7] The

Plaintiffs filed these submissions under the following docket entries in the adversary proceeding,

summarized as follows:

| | |
|---|---|
| Dkt. No. 1 | Adversary proceeding cover sheet (2 pages); makes $50,000 demand and, according to the various and numerous boxes checked, generally seeks a determination that the Debtor's debt is nondischargeable and to deny Debtor's discharge. Plaintiffs referred to this document as a "Filing Complaint," although no actual complaint was included. |
| Dkt. No. 3 | Twelve pages titled "evidence of fraud." |
| | At page 2, an Exhibit titled "Transaction Result" appears to show the transfer of an aggregate 50 million Korean *won* to an account controlled by Jay Oh, Debtor's spouse, on January 9, 22, and 27, 2018.[8] A handwritten note on the side says that this figure equals $50,000. |
| | At page 7, an October 22, 2018 text message appears to show a proposal to repay the debt, but the source and recipient are not clear, and it is not clear whether the parties agreed to the proposed terms. |
| Dkt. No. 5 | Six pages titled "evidence in support" including text messages translated by an unknown person and a copy of the October 22, 2018 repayment proposal. |
| Dkt. No. 6 | One page titled "Support Document - Complaint to Deny Discharge" that seeks to deny the Debtor's discharge on the grounds that Debtor filed her petition after she promised to repay Plaintiff(s) and that the Debtor was buying a house and car and doing business in cash with her "fraud partner," Mr. Jay Oh and his company. |
| Dkt. No. 10 | Ten pages consisting of: a two-page plea to the Court to compel the return of the funds and complaining about Debtor's filing the petition after allegedly promising to repay the funds and interfering with Plaintiffs' attendance at the meeting of creditors; a Palisades Park, New Jersey police report; a further statement of Ms. Yoon's alleged non-monetary damages; and several pages of transcriptions |

---

[7] Dkt. Nos. 1, 3, 5, 6, 10, 11.
[8] Debtor testified that her spouse and she were not living together. Apr. 20, 2022 Trial Tr. 132:11-16, Dkt. No. 62.

of telephone texts, including a duplicate of that found in Dkt. No. 3, *supra*.

Dkt. No. 11    Two pages consisting of a cover page and a page of text that complains about Ms. Yoon's non-monetary damages; Debtor's litigation delays; and Debtor's apparent, continued ability to do business and to access funds.[9]

Plaintiffs did not attempt to introduce any of the above supporting documents as evidence at trial.

Debtor (through bankruptcy counsel) filed a July 13, 2019 Answer to the Complaint.[10]   The Debtor's Answer (which has no exhibits) consists of general denials, raises the defenses of time-bar and failure to state a claim and states that she "borrowed money from Nam Yoon, and not from Bin Han."[11]

The Court entered a July 23, 2019 Order that granted the Plaintiffs' application to waive the filing fee for the Complaint.[12]   The Court also entered a September 16, 2019 Joint Mediation Order appointing Bankruptcy Judge Stacey L. Meisel as mediator and a September 18, 2019 Joint Scheduling Order that scheduled a discovery end date of November 14, 2019, with a first scheduled trial date of December 6, 2019.[13]   Judge Meisel filed an October 29, 2019 Mediation Report of no settlement.[14]   For a period of time (from about August 14, 2019 through November 6, 2019), Plaintiffs and Debtor peppered the docket with additional submissions that complained about each other's conduct but that did not request relief that this Court could afford.[15]

In a December 26, 2019 letter, Plaintiffs requested an extension of their discovery obligations.[16]   In a December 27, 2019 letter, Plaintiffs advised the Court that Debtor had not

---

[9] Dkt. Nos. 1, 3, 5, 6, 10, 11.
[10] July 13, 2019 Answer, Dkt. No. 12.
[11] July 13, 2019 Answer, Dkt. No. 12.
[12] July 23, 2019 Order, Dkt. No. 14.
[13] Sept. 16, 2019 JMO, Dkt. No. 21; Sept. 18, 2019 JSO, Dkt. No. 22.
[14] Oct. 29, 2019 Mediation Report, Dkt. No. 25.
[15] See e.g., Dkt. Nos. 17, 18, 20, 26, 28.
[16] Pl. Dec. 26, 2019 Letter, Dkt. No. 31.

responded to their deposition request.[17]  Debtor's Counsel sought extensions of the discovery

period on November 7, 2019 and January 17, 2020 and ultimately filed a February 17, 2020 motion

(amended on March 16, 2020 as to the return date only) to be relieved as Counsel on the grounds

that Debtor had ceased communicating with him.[18]  The Court entered a March 31, 2020 Interim

Order on that motion and a May 13, 2020 Order that ultimately allowed Counsel to withdraw.[19]

The Court entered additional Joint Scheduling Orders on December 2, 2019, March 17, 2020, May

8, 2020, and held a telephone status conference with the now-self-represented parties on July 29,

2020 (and carried the conference to September 25, 2020 as a holding date).[20]

After the July 29th conference, the Court issued a July 30, 2020 scheduling letter that

required the parties to make certain additional submissions and advised the parties that the Court

would determine by September 25, 2020 whether the Court could decide the Complaint on the

papers, as the parties seemed to request, or required a trial.[21]  The parties subsequently made

additional submissions (and Ms. Yoon submitted additional documents after the deadline).[22]  All

of those submissions demonstrated that there were material factual disputes that would require a

trial.  Accordingly, by letter dated August 31, 2021, the Court advised the parties that it required a

trial to decide the adversary proceeding, scheduled trial for November 10, 2021, and directed the

parties to bring a qualified, disinterested interpreter or interpreters to the trial.[23]  Both sides

subsequently requested additional adjournments because of the unavailability of a party, a witness,

---

[17] Pl. Dec. 27, 2019 Letter, Dkt. No. 32.

[18] Debtor Requests for Extension, Dkt. Nos. 27, 33; Feb. 17, 2020 Mot. to Withdraw, Dkt. No. 34; Mar. 16, 2020 Am. Mot. to Withdraw, Dkt. No. 36 (also duplicated at Dkt. No. 38).

[19] Mar. 31, 2020 Order, Dkt. No. 42; May 13, 2020 Order, Dkt. No. 47.

[20] Dec. 2, 2019 Order, Dkt. No. 29; Mar. 17, 2020 Order, Dkt. No. 39; May 8, 2020 Order, Dkt. No. 45.  During the latter part of this period, the pandemic resulted in the courthouse being closed, with no trials being conducted.

[21] July 30, 2020 Letter, Dkt. No. 50.

[22] Aug. 24, 2020 Pl. Certif., Dkt. No. 51; Sept. 11, 2020 Debtor Resp., Dkt. No. 52; Nov. 10, 2020 Pl. Letters, Dkt. Nos. 53, 54.

[23] Aug. 31, 2021 Trial Notice, Dkt. No. 55.

or an interpreter.  The Court adjourned the trial an additional time because resurgence of the pandemic had closed the courthouse again.[24]  The Court held a final scheduling conference on February 10, 2022 and conducted a one-day trial on April 20, 2022.

B. The April 20, 2022 Trial

Although the parties were repeatedly advised by the Court in pretrial conferences and in pretrial communications to submit and exchange in advance of trial: (i) witness lists; and (ii) documents or other material that they sought to enter into evidence, neither party did so.[25]  Each party proffered witnesses and exhibits for the first time at trial.  Each party provided an interpreter, as was directed by the Court.  Mr. Myong-Hun Kim was the interpreter for Ms. Yoon.  Because Mr. Han spoke English well, he advised that he did not require an interpreter, although the interpreter translated the questions by Ms. Yoon to Mr. Han.[26]  Ms. Joanna Koh was the interpreter for the Debtor.[27]  Both sides appeared to believe that the documents previously submitted to the Court were part of the trial record but were advised by the Court that prior submissions did not constitute evidence at trial unless properly introduced and admitted as such at trial.  Given this state of affairs, the Court reluctantly offered to postpone the trial to allow the parties additional time to prepare.  However, both parties declined any further adjournment and declared that they wanted to proceed.[28]  Accordingly, the trial was conducted on April 20, 2022.  The Plaintiffs' witnesses were Mr. Han, Ms. Yoon, and Ms. Nam Kim, a nurse with whom Ms. Yoon stayed *after* her falling out with Debtor.  Debtor's only witness was Debtor herself.

---

[24] Dec. 30, 2021 Letter, Dkt. No. 60.
[25] See, e.g., Aug. 31, 2021 Letter, Dkt. No. 55; Nov. 5, 2021 Letter, Dkt. No. 57; Nov. 8, 2021 Letter, Dkt. No. 58; Apr. 7, 2022 Letter, Dkt. No. 61.
[26] Apr. 20, 2022 Trial Tr. 3:15-23, Dkt. No. 62.
[27] Apr. 20, 2022 Trial Tr. 15:4-16:20, Dkt. No. 62.  Mr. Kim, Ms. Yoon's interpreter, left the proceeding early because of a prior commitment not disclosed to or approved by the Court; thereafter Ms. Koh, Debtor's interpreter, with the consent of all parties (and Ms. Koh) interpreted for both parties.  Apr. 20, 2022 Trial Tr. 44:7-46:25, Dkt. No. 62.
[28] Apr. 20, 2022 Trial Tr. 3:24-5:11, 7:21-9:25, Dkt. No. 62.

All three parties (Ms. Yoon, Mr. Han and Debtor) made opening statements.[29]  As Mr. Han made clear in his opening statement, he did not transfer the money to Debtor.  Instead, he stated only that Ms. Yoon and he "saved [the money] together" for their wedding expenses.[30]  Further, Mr. Han acknowledged that he was not involved in or even aware of the original transfer of funds from Ms. Yoon to Debtor.[31]  Accordingly, the Court finds that Mr. Han was not a proper party to the section 523(a) allegations of the Complaint as he was simply not involved in the subject transaction until sometime after the funds had been advanced and therefore could not have been misled or induced by the Debtor to make the advances.[32]  Mr. Han did claim that he contributed to the funds that Ms. Yoon advanced to the Debtor (without his knowledge), so Mr. Han is at least arguably a creditor with standing to bring a claim under 11 U.S.C. § 727 to deny or revoke Debtor's discharge.

In general (but particularly as to Plaintiffs), the parties' exhibits and testimony were less than cogent, clear or, in many instances, consistent with certain prior submissions in the case.  In summary, Ms. Yoon alleged that, early in 2018, she transferred 50 million Korean *won* (currency symbol "₩") from her bank account (or from her brother's bank account) to a bank account held by Debtor's spouse, Jay K. Oh.  The funds transferred were worth $43,000 to $50,000 (U.S.).[33]  Debtor acknowledges receipt of the money.[34]  Plaintiffs and Debtor disagree in certain respects about the purpose of the transfer.  Up to the point of trial, Ms. Yoon alleged that she transferred

---

[29] Apr. 20, 2022 Trial Tr 17:15-24:12, Dkt. No. 62.

[30] Apr. 20, 2022 Trial Tr. 21:20-22:19, Dkt. No. 62.

[31] Apr. 20, 2022 Trial Tr. 21:20-22:19, Dkt. No. 62.

[32] Apr. 20, 2022 Trial Tr. 35:9-36:4; 62:16-18, Dkt. No. 62.

[33] Apr. 20, 2022 Trial Tr. 85:5-24; 93:7-9, Dkt. No. 62; Ex. D-1A.  During the course of the trial, the ₩50 million and $50,000 were often referred to interchangeably, notwithstanding the differing valuations.  The Court will attempt to track the parties' testimony in these regards, however, there may be instances where the references are technically incorrect.  Thus, the Court may at times refer to *won* where the reference should have been to dollars, and vice versa.  The Court finds the difference to be immaterial in most instances because the Debtor acknowledged that she owed Ms. Yoon $50,000 and the parties often referred to the currencies interchangeably.

[34] Apr. 20, 2022 Trial Tr. 93:7-19; 93:25-94:2; 96:15-99:10, Dkt. No. 62.

the funds, which were intended for the expenses of her wedding to Mr. Han, to Debtor only to obtain a more favorable exchange rate than she would otherwise have received and that she did not authorize Debtor to use the funds.  Yet, Ms. Yoon testified at trial that she transferred the funds to Debtor to assist Debtor with her importing business and that Ms. Yoon anticipated repayment at a more favorable exchange rate than she would have otherwise received, together with some other additional, but ill-defined compensation.[35]

Debtor testified that Ms. Yoon willingly invested the funds in Debtor's import business, that specific repayment terms were not agreed to or even discussed and that she did not anticipate Ms. Yoon's demand for repayment as she believed the advance was an investment in their business with no set repayment terms.[36]  Both parties concur that, after the ₩50 million transfer, Debtor transferred some funds back to Ms. Yoon (or her brother) in dollars.  Debtor claims that these transfers represented Ms. Yoon's return on her investment in Debtor's business.[37]  Ms. Yoon claimed that the payments were in the nature of "compensation" which was a combination of thankfulness and an apology.[38]  The specific trial testimony and evidence in these regards is described below.

(i)    The January 2018 Transfer of Funds

Debtor produced and ultimately admitted into evidence as Exhibit D-1A a one-page, two-part table that she created with supporting documents.[39]  The Exhibit is discussed in greater detail below during the analysis of Debtor's testimony but is also described here to anchor the discussion of the transfers.  The first table ("Table One"), titled "Where to use the investment," purports to

---

[35] Apr. 20, 2022 Trial Tr. 79:22-81:22; 83:4-21, Dkt. No. 62.
[36] Apr. 20, 2022 Trial Tr. 102:11-103:4, Dkt. No. 62.  Here, Debtor testified that: "we promised to be in business together for 10 years, 20 years or how many ever years it would take, for example, because we did not decide on a date when our relationship will be over."
[37] Apr. 20, 2022 Trial Tr. 101:21-103:1, Dkt. No. 62.
[38] Apr. 20, 2022 Trial Tr. 81:7-22, Dkt. No. 62.
[39] Ex. D-1A.

show Ms. Yoon's transfer of ₩50 million (characterized as $43,478.26 on the table at a $1=

W1150 exchange rate also listed on the table) to the Debtor in three installments on January 9, 22,

and 27, 2018 as follows:[40]

TABLE ONE

| Date | Deposit | Wired | Relation | | Description |
|------|---------|-------|----------|---|-------------|
| 1/9/2018 | ₩ 25,000,000 | | Baiknamkye | Brother | Invest. |
| 1/9/2018 | | ₩ 10,000,000 | Anying | Supplier | payment for the goods |
| 1/9/2018 | | ₩ 1,300,500 | Manasul | Supplier | payment for the goods |
| 1/10/2018 | | ₩ 10,000,500 | Anying | Supplier | payment for the goods |
| 1/17/2018 | | ₩ 3,200,500 | Anying | Supplier | payment for the goods |
| 1/22/2018 | ₩ 10,000,000 | | Joannayoon | Ms. Yoon | Invest |
| 1/22/2018 | | ₩ 10,000,500 | Anying | Supplier | payment for the goods |
| 1/27/2018 | ₩ 15,000,000 | | Baiknamkye | Brother | Invest |
| 1/27/2018 | | ₩ 15,000,500 | Anying | Supplier | payment for the goods |
| Korean Currency | ₩ 50,000,000 | ₩ 49,502,500 | | | payment for the goods |
| US Currency | $   43,478.26 | $   43,045.65 | | | payment for the goods |

Debtor testified that the deposits were to a bank account held in Korea by Debtor's spouse, Jay K.

Oh.[41]  Some of the transfers were from Baiknamkye (formally "Baik Nam Kye"), whom Debtor

identified as Ms. Yoon's younger brother.[42]  Table One is supported by eight more pages of Exhibit

D-1A (in Korean) relating to wire-transfer disbursements, which Debtor describes during her

testimony, *infra*.[43]

The second table ("Table Two"), titled "Profit payment details," consists of ten entries

from April 16, 2018 through July 20, 2018 aggregating $14,263.39 in U.S. currency.[44]  Table Two

does not identify the payor or payee or the sending and receiving banks.[45]  Debtor later testified

---

[40] Ex. D-1A; Apr. 20, 2022 Trial Tr. 107:5-111:19, Dkt. No. 62 (admitting Ex. D-1A, CM-ECF pages 3 through 10, into evidence.  CM-ECF page 11 of D-1A was inadvertently omitted at that time but is included as part of the evidence. The conversion legend as copied above preserves the Roman "W" (which Debtor used) rather than the "₩" symbol.
[41] Apr. 20, 2022 Trial Tr. 96:15-97:7, Dkt. No. 62.
[42] Apr. 20, 2022 Trial Tr. 93:7-12; 97:8-12, Dkt. No. 62.
[43] Ex. D-1A.
[44] Ex. D-1A.  The Court added the check numbers in brackets in the far-right column (1457, 1236, 1309) for clarity from Ex. D-1C, discussed *infra.*
[45] Ex. D-1A.

that the first three payments (totaling $2,827.39) were paid to Ms. Yoon's brother and that the

remaining seven payments (totaling $11,436) were paid to Ms. Yoon (although the Court

ultimately determined that the Debtor had failed to prove that $736 in checks were paid to Ms.

Yoon).[46]  Table Two, as prepared by the Debtor, is set forth below:

TABLE TWO

| Date | Wired | | Description |
|------|-------|---|-------------|
| | Korean Currency | US Currency | |
| 4/16/2018 | ₩ 1,000,500 | $    870.00 | wired |
| 4/18/2019 [sic] | ₩ 1,650,500 | $ 1,435.22 | wired |
| 4/24/2018 | ₩   600,500 | $    522.17 | wired |
| 5/18/2018 | | $ 3,000.00 | cash |
| 6/11/2018 | | $ 1,500.00 | check [1457] |
| 6/21/2018 | | $    500.00 | check |
| 6/26/2018 | | $ 2,000.00 | check [1236] |
| 7/17/2018 | | $    236.00 | check |
| 7/18/2018 | | $ 1,500.00 | check [1309] |
| 7/20/2018 | | $ 2,700.00 | cash |
| Total | | $14,263.39 | |

Plaintiffs did not directly challenge the Debtor as to any of the information on this chart

relating to the payments and transfers it describes, nor did they offer any contrary evidence as to

the amount, purpose or use of the funds.  In fact, as will be seen below, Ms. Yoon repeatedly

testified that she and the Debtor did do some type of business together, that Debtor had originally

asked for the funds on an urgent basis to pay for goods she was buying and acknowledged that the

Debtor made certain payments to Ms. Yoon on account of the advances.[47]

(ii)    Testimony of Plaintiff Nam Yoon

Ms. Yoon testified on direct examination by both providing her version of the events in

narrative form and responding to the Court's questions.  Ms. Yoon led with: (i) her perception that

---

[46] Apr. 20, 2022 Trial Tr. 100:4-101:15, Dkt. No. 62.
[47] Apr. 20, 2022 Trial Tr. 78:23-79:1; 79:22-81:12; 82:25-83:21; 87:2-90:1, Dkt. No. 62.

Debtor had lived and continued to live a luxurious lifestyle and still made money but failed to repay Ms. Yoon; and (ii) her frustration that Debtor filed her bankruptcy petition after promising to repay Ms. Yoon.[48]    The Court asked Ms. Yoon to explain the nature and purpose of the transaction, with the Court's questions directed to the translator, for translation to the witness:

> Q    (By the Court) [W]hat was the nature of the transaction from the start of the $50,000 transaction?
>
> A    As it can be learned from the documents that I have submitted already, she asked for -- so she initially asked me, "I need $10,000 right away because I really -- I really urgently need it to repay something -- or pay for something."  And then she came to me again with a similar request, "I need this money. I need this money. So quickly, quickly." And that's the way she asked for these sums of money totaling the eventual amount.
>
> Q    So was this money for the business, for Ms. Cho's business?
>
> A    That I don't know exactly because the money ended up putting -- deposited into her husband's account.
>
> Q    Okay. Were -- was Ms. Yoon and Ms. Cho in business together at that time?
>
> A    So no. We were not in business together. She bought some items from me, some products from me wholesale and she did make payments on time for those products that she bought from me.  And I think it was to establish some kind of credit for the eventual product.[49]

The Court finds this testimony to be confusing and at least inconsistent.  Nonetheless, Ms. Yoon's testimony confirmed that she caused the ₩50 million to be transferred to the Debtor and that, despite her initial denials, Ms. Yoon and the Debtor did do some type of business together, whether "wholesale" or otherwise, for which the Debtor made payments to Ms. Yoon.  Further, and significantly for purposes of this nondischargeability action, absent from Ms. Yoon's

---

[48] Apr. 20, 2022 Trial Tr. 67:10-15; 67:22-68:2, Dkt. No. 62.
[49] Apr. 20, 2022 Trial Tr. 79:22-80:17, Dkt. No. 62 (emphasis suppled).

testimony is any indication as to what fraudulent or misleading statements or omissions were made

by the Debtor at the time the funds were advanced by Ms. Yoon.

When asked whether Debtor and she discussed repayment terms, Ms. Yoon testified that

Debtor offered to pay "compensation" until the money was paid.[50]   Ms. Yoon described

"compensation" as a mix of "apologetic" and "thankfulness" for the money, amounting to interest

at $1,300 per month until Debtor repaid the principal.[51]  Ms. Yoon testified that Debtor said that

she would repay Ms. Yoon in full on six months' notice.[52]  Sometime after July of 2018, when

Debtor stopped paying the "compensation," Ms. Yoon demanded repayment in full.[53]  When asked

whether Ms. Yoon's seeking a beneficial exchange rate for *won* was part of the original transaction,

Ms. Yoon testified that it was:  that Debtor credited her for about $46,000 when Ms. Yoon gave

her ₩50 million (the table above says Ms. Yoon's initial credit was for $43,478.26 at an exchange

rate of $1= ₩1150), but would repay Ms. Yoon $50,000 (at an exchange rate of $1= ₩1001).[54]

With that testimony, the Court asked Ms. Yoon, "Would you characterize your transfer of money

to Ms. Cho as a loan or something else?"[55]  Ms. Yoon testified:

> A   Ms. Cho -- I was very confused by what Ms. Cho was saying to me, so I
> believe that I was manipulated by -- during this transaction.
>
> Q   (By the Court) Okay. But when she transferred the $10,000 at a time to Ms.
> Cho did she think it was a loan, did she think it was an investment in a
> business? Did she think she was becoming partners with her? What -- I need
> to know what the nature --what she thought the nature of the transaction
> was.

---

[50] Apr. 20, 2022 Trial Tr. 81:1-5, Dkt. No. 62.
[51] Apr. 20, 2022 Trial Tr. 81:7-22, Dkt. No. 62.  The Court notes that $1,300 monthly interest on a $50,000 advance
would amount to interest of $15,600 per year, or a 31.2% rate, at a time when general interest rates were at low
single-digit levels. Thus, whether the payments to Ms. Yoon were supposed to be $1,300 per month, as testified by
Ms. Yoon, or some other less defined profit split, as testified by the Debtor, both parties' testimony indicates that the
₩50 million advance was a business transaction on which a return was expected (and received) by Ms. Yoon.
[52] Apr. 20, 2022 Trial Tr. 81:23-82:1, Dkt. No. 62.
[53] Apr. 20, 2022 Trial Tr. 82:1-4, Dkt. No. 62.
[54] Apr. 20, 2022 Trial Tr. 82:5-24, Dkt. No. 62.
[55] Apr. 20, 2022 Trial Tr. 83:1-3, Dkt. No. 62.

A      So it was, first of all, I believe her to be a very savvy businessperson. <u>I just
       wanted to just help her out when she was in need,</u> just keeping in mind that
       she knows what she's doing. <u>And also, that was a time when I, in fact, did
       need some U.S. dollars here at the time, so those were two things that I had
       in mind when I gave her this money.</u> It was a time when I was actually
       preparing for a wedding with Mr. Han.

Q      <u>So it was just an advance of funds with expectation of repayment?  Is that –</u>

A      <u>That is correct.</u>[56]

Ms. Yoon did not provide any concrete dates or other terms in her testimony -- other than the

asserted $1,300 monthly payment.   However, that payment amount is not connected to any

document or other evidence, including the payments in various differing amounts made by the

Debtor to Ms. Yoon.[57]

       As an accompaniment to Ms. Yoon's testimony, the Court admitted into evidence

Plaintiffs' only Exhibit, P-1, described as the text transcription of an October 20, 2018,

twenty-six-second telephone video recording (with audio) of a conversation between Ms. Yoon

and the Debtor (the caption states that Speaker 1 is on camera and that Speaker 2 is off camera)

(all ellipses are in the original):

S1:     I'm practically begging now, for you to wait . . .

S2:     What, you're not begging, you keep quibbling with me, are you not?

S1:     . . .

S2:     So, you'll pay the principal starting next month?

S1:     Yeah, the principal, I'll return the same amount you paid in, in Korea . . . OK?

S2:     50 million won?

S1:     How much do I need to pay back, then?  I should return all of the principal to you.

S2:     So . . . will you be doing so in the US, or paying 50 million won in Korean money

---

[56] Apr 20, 2022 Trial Tr. 83:4-21, Dkt. No. 62 (emphases supplied).  See also n.51 above.
[57] Table Two, Ex. D-1A.

14

. . .

S1:    I'll be paying 50 million won in Korean money.[58]

This appears to be the essence of the fraud or misrepresentations that Ms. Yoon alleges were made

by the Debtor; i.e., that repayment of the $50,000 would be made the following month.  But those

statements were made in October of 2018, many months after Ms. Yoon advanced the funds (in

January of 2018) and therefore could not and did not induce Ms. Yoon to make the advances.

On cross-examination, Ms. Yoon acknowledged that she received from the Debtor the

entire $14,263 listed at the bottom of Table Two, Exhibit D-1A:

Q    (By Debtor) And from April 16 until July 20, Ms. Nam, you took  $14,000
--

Q    $14,263.

Q    -- $14,263 you took that from me. I gave it to you, right? How long -- . . .

Q    How long did you say it took you to give me that?

A    So it was from April 16th until July 20. I cannot remember the dates
exactly.

Q    So you said that this was the characteristics of the interest and you said
that $1300 was supposed to be given, but I gave you more than $1300
because -- the reason for that is because after working together we were
supposed to share the profits together. That was what was decided upon.

A    So when that woman gave me a little more money than usual on those
months, she was paying me for the merchandise that she took, so she was
paying me for the prices of the merchandise.[59]

This testimony by Ms. Yoon also acknowledges that Debtor and she were in some type of

business together ("paying me for the merchandise that she took") and that Ms. Yoon was receiving

[58] Ex. P-1; Apr. 20, 2022 Trial Tr. 84:9-18, Dkt. No. 62.  Mr. Myong-Hun Kim, Ms. Yoon's interpreter at trial, also
translated and signed the Affidavit of Translation of the video; Debtor stated on the record that the translation was
accurate.  Aug. 13, 2020 Aff. of Translator, at 2, Ex. P-1; Apr. 20, 2022 Trial Tr. 83:22-84:18, Dkt. No. 62.
[59] Apr. 20, 2022 Trial Tr. 87:10-88:6, Dkt. No. 62 (emphasis supplied).

additional compensation for her advances beyond repayments at a favorable exchange rate, whether in the form of interest, sharing of profits or some other form of compensation.

The final testimony elicited by Debtor on her cross-examination of Ms. Yoon further confirms that the two engaged in at least some type of business transactions together:

> Q     (By Debtor) Didn't you tell me that what you imported was not selling? So didn't you ask me to sell that for you?
>
> A     What does that have anything to do -- . . . with this and what I did was the wholesale – wholesale that I did. . . .
>
> Q     And there was a time when you sold the stuff that I imported, right?
>
> A     <u>Yes, sir. So we work with each other. So we worked together</u>.
>
> Q     So does it make a joint business when we mutually sold and purchased between us?
>
> A     So when it's a relationship of selling and purchasing between the two, you cannot defraud anyone in that situation.  Is that what you think?  So then if you had paid that, why did you use $50,000 for the bankruptcy? . . .[60]
>
> Q     So you know, as well as I know, the -- so you think this money, the merchandise was imported. You know about that and I know about that and you saw that, too, correct?
>
> A     <u>Yes. There was a time when I went over to help you out so I did see that you did brought a lot of merchandise in.</u>
>
> Q     <u>Well, I believe you're saying that there was a profit that was achieved from that, but did you share that profit with me?</u>
>
> A     <u>Yeah, I have (indiscernible) with that</u>.
>
> Q     And before you yourself gave $1300 before that you gave money more than that and as you were doing that, you yourself said that you were giving more money because there was more profit.
>
> A     No, that's not it. It was not a profit.  If it was a joint business shouldn't you have told me how much was sold and how much was sold where? Shouldn't you have shared that information with me?[61]

---

[60] Apr. 20, 2022 Trial Tr. 88:10-89:2, Dkt. No. 62 (emphases supplied).
[61] Apr. 20, 2022 Trial Tr. 89:11-90:1, Dkt. No. 62.

Here again, although the specific testimony is less than clear, there are multiple admissions by Ms. Yoon that Debtor and she conducted some type of business with each other and that payments were made to Ms. Yoon by the Debtor in connection with that business that went beyond some type of limited or simple currency exchange agreement.

(iii)    Testimony of Plaintiff Bin Han

On direct examination, Mr. Han testified that Ms. Yoon introduced him to Debtor at a restaurant; that Ms. Yoon professed to have much respect for Debtor; and *that Yoon and Debtor were already in business* but that the $50,000 in issue had nothing to do with their business arrangement.[62]  Ms. Yoon asked Mr. Han the following questions on direct examination:

Q    (By Yoon) <u>You do know that when Ms. Cho and I were engaged in the wholesale business together you know of that fact.</u>

A     Yes.

Q    And you also know that $50,000 –

A    Separate.

Q    -- had nothing to do with that wholesale –

A    That's correct.

Q    -- business.

A    Yes, that's correct.[63]

Notwithstanding the initial denial, Mr. Han reiterated later in his direct testimony that Debtor and Ms. Yoon were in business together:

Q    (By the Court)  [Y]ou said it [the $50,000] had nothing to do with the business, but they were in business, Nam and Ms. Yoon and Ms. Cho were in business together for a period?

---

[62] Apr. 20, 2022 Trial Tr. 49:19-50:3; 50:14-22, Dkt. No. 62.
[63] Apr. 20, 2022 Trial Tr. 50:14-22, Dkt. No. 62 (emphasis supplied).

A    As a business. As -- not as like a partner or anything, but I believe [Ms. Yoon] sold something to her. That's what I meant by business if I'm not -- not mistaken.[64]

Mr. Han testified that, at a date unstated, because Debtor did not return their calls, Ms. Yoon and he went to Debtor's place of business to ask her to return the money quickly, as they had saved the money for their wedding ceremony.[65]  On direct examination, Mr. Han could not explain why Ms. Yoon transferred the $50,000 to Debtor; he could state only what Debtor was *not* to do with it and again confirmed that Ms. Yoon and the Debtor were doing business together:

[Ms. Yoon] never let her invest the money.  She [Debtor] was always changing topics as investment or, you know, other things, et cetera.  So I want to make sure that, you know, she didn't let her borrow any cash or invest to her, as she said, or she didn't even switch the money, currency either, so I don't know what she really wanted to do.  But, yes, I did saw her doing business with [Ms. Yoon] on the site.[66]

On questioning by the Court, Mr. Han articulated his understanding that Ms. Yoon gave Debtor the $50,000, which Ms. Yoon and Mr. Han, had accumulated for their wedding, in order to get a good exchange rate and that Debtor thereafter sought to borrow the money or to keep it for business investment:

Q    (By the Court) You said the money was -- you know, sometimes Ms. Cho referred to it as borrowed, investment business purposes. But what -- do you have an understanding as to what the purpose of the $50,000 transaction was?

A    Your Honor, my understanding is this. From the very beginning that Ms. Cho have told [Ms. Yoon] that she was going to give her a good rate on changing Korean won to U.S. dollars. And then she pretty much manipulated [Ms. Yoon] for keep on giving her money.[67]

---

[64] Apr. 20, 2022 Trial Tr. 59:12-18, Dkt. No. 62.
[65] Apr. 20, 2022 Trial Tr. 50:23-51:4; 52:24-53:6; 53:12-20; 54:5-11, Dkt. No. 62.  See also Apr. 20, 2022 Trial Tr. 21:20-22:19, Dkt. No. 62 (Mr. Han was not aware of the transfer of the monies until after the transfers were made).
[66] Apr. 20, 2022 Trial Tr. 51:4-11, Dkt. No. 62 (emphasis supplied).
[67] Apr. 20, 2022 Trial Tr. 55:14-22; 59:1-18, Dkt. No. 62.

Critically, and notwithstanding Ms. Yoon's and his joint plans for the $50,000 (or ₩50 million),

Mr. Han did not know that Ms. Yoon transferred the money to Debtor until *after* Debtor allegedly

demanded an additional $300,000 from Ms. Yoon to buy Debtor out of the business:

> So [Debtor] was basically manipulating [Ms. Yoon]. And I did see that and that
> was a point that where I stepped in. I said, "Hey, what money -- what money is
> this?" and then she came out and said this was the $50,000 that we should -- we
> were originally planning to use for our wedding ceremony. And she also had to use
> from before other purposes as well, so I guess that really kind of traumatized her.[68]

In response to the Court's questions, Mr. Han testified: (i) that Ms. Yoon and he telephoned

Debtor together to try to recover the money, but Debtor pleaded with them to let Debtor borrow it

for a period, but Ms. Yoon refused; (ii) that Ms. Yoon and he went to the Korean Association "for

help" to try to compel Debtor to repay; (iii) that Ms. Yoon and he spoke again to Debtor (Mr. Han

cannot recall whether in person or by phone), and Debtor promised to repay "next week"; and (iv)

that Mr. Han even approached Debtor's spouse, who allegedly told Mr. Han that it was "not a

fraud" in the United States not to repay borrowed funds."[69]  Mr. Han and/or Ms. Yoon also filed

criminal charges against the debtor in various jurisdictions.[70]  Mr. Han placed no timeline on these

contacts and events except to say that Debtor's promise to pay in full post-dated her petition (a

position contradicted elsewhere by Ms. Yoon's argument that Debtor's petition was "fraudulent"

because she filed *after* promising to repay Ms. Yoon).[71]

---

[68] Apr. 20, 2022 Trial Tr. 55:18-56:9, Dkt. No. 62 (quoted at 56:2-9).

[69] Apr. 20, 2022 Trial Tr. 56:19-57:4; 57:7-19; 57:23-58:7; 58:18-22, Dkt. No. 62.

[70] Apr. 20, 2022 Trial Tr. 123:2-20; 128:23-129:18; 135:2-137:7; Nov. 17, 2018 Ridgefield, New Jersey Police Report, Ex. D-3.

[71] Apr. 20, 2022 Trial Tr. 58:6-9, Dkt. No. 62 ("Ms. Cho said that 'Okay, I will return it to you next week.' But we realized that prior to that, prior to the -- that point of time she already filed for bankruptcy and we were included in there").

On cross-examination, Debtor declined to ask Mr. Han more than one question, "because I don't know him really. I just work with [Ms. Yoon] so I don't have any question for him right now."[72]

In sum, the Court finds that Mr. Han's testimony was based entirely on post-advance discussions and interactions with the Debtor and Ms. Yoon. It was not based on any personal knowledge or involvement he had in the original ₩50 million advance or the terms on which it was made by Ms. Yoon. In fact, Mr. Han acknowledged that he did not know about the transfers to the Debtor until *after* they occurred. As a result, the Court determines Mr. Han is not a proper party to the section 523(a)(2) claim because there was no proof that the Debtor made any fraudulent statements or omissions to him at the time the advances were made by Ms. Yoon. Instead, Mr. Han became involved only after the advances were made and Ms. Yoon was seeking repayment.

   (iv)   <u>Testimony of Plaintiffs' Witness Nam Kim</u>

Yoon also called as a witness, Ms. Nam(a) Kim ("Nam Kim"), who identified herself as a nurse and Ms. Yoon's "older friend," and testified that she took care of Ms. Yoon (accommodation, meals, psychological support, hospital trips) because of the financial setback that Ms. Yoon suffered after losing the $50,000.[73] Nam Kim testified that Ms. Yoon was unable to pay rent, suffered from depression and, in Nam Kim's opinion, suffered a miscarriage from the stress created by the loss of nearly $50,000.[74] Nam Kim based her testimony largely upon her observation of Ms. Yoon's behavior after the $50,000 transaction.[75] Nam Kim testified that she never spoke to or saw Debtor but did see a video of Debtor screaming as well as some text

---

[72] Apr. 20, 2022 Trial Tr. 61:20-22; 63:5-9, Dkt. No. 62.
[73] Apr. 20, 2022 Trial Tr. 26:8-27:17, Dkt. No. 62.
[74] Apr. 20, 2022 Trial Tr. 26:21-27:17, Dkt. No. 62.
[75] Apr. 20, 2022 Trial Tr. 28:9-29:15; 37:13-24, Dkt. No. 62.

exchanges between Ms. Yoon and Debtor.[76]  Nam Kim confirmed that Ms. Yoon (and also Mr. Han) resided with her *after* Ms. Yoon transferred the money to Debtor.[77]

Thus, Nam Kim's testimony all related to the period *after* the ₩50 million advance was made and how the Debtor's failure to repay Ms. Yoon caused various severe adverse consequences to Ms. Yoon.  While the Court is sympathetic to the problems the Debtor's failure to repay Ms. Yoon caused, Nam Kim's testimony does not in any way relate to or support any alleged misrepresentations or omissions made by the Debtor to Ms. Yoon in connection with the advance (or otherwise).

(v)    <u>Testimony of Debtor</u>

Debtor also testified on direct examination by both providing her version of the events in narrative form and responding to the Court's questions.  Debtor testified that she acted as an "older sister" to Ms. Yoon, who had no relatives in the United States and that "we used Ms. [Yoon's] money to import goods and that's how we ended up working together."[78]

Debtor described Table One ("Where to use the investment") and Table Two ("Profit payment details") at Exhibit D-1A.  These Tables were designed to show:    the inflow of $43,478.26 (in *won*) from January 9, 2018 through January 27, 2018; the immediate outflow of $43,045.65 (in *won*) (also from January 9, 2018 through January 27, 2018); and the disbursement of $14,263.39 from April 16, 2018 through July 20, 2018.[79]  Debtor testified that "it was already decided" that ₩50 million of merchandise would be purchased but that the purchase money arrived in installments.[80]  Debtor testified that Ms. Yoon told her: "'Let's use this money and let's

---

[76] Apr. 20, 2022 Trial Tr. 29:16-33:2, Dkt. No. 62.
[77] Apr. 20, 2022 Trial Tr. 36:22-25; 37:13-24; 39:21-25, Dkt. No. 62.
[78] Apr. 20, 2022 Trial Tr. 93:23-94:2, Dkt. No. 62.
[79] Apr. 20, 2022 Trial Tr. 93:7-22, Dkt. No. 62.
[80] Apr. 20, 2022 Trial Tr. 98:20-99:9, Dkt. No. 62.

buy the stuff together and let's make money together.'"[81]   Debtor averred that, because she had to

pay the Korean suppliers in advance, she disbursed almost immediately the money that Ms. Yoon

gave her.[82]   Debtor acknowledged that ₩25 million came from Debtor's younger brother, Baik

Nam Kye,[83] but testified somewhat inconsistently about Ms. Yoon's brother's expectation about

the money:

> A    (By Debtor)  This was [Ms. Yoon's] money.  She said that this was the
> money that the brother will give her.[84]
>
> A    (By Debtor) [Ms. Yoon] said that when she was in Korea she lent the money
> to her younger brother, and because she needed to bring that money over to
> the United States, and we had a good intention to work together.[85]

Notwithstanding those limited inconsistencies, the Debtor and Ms. Yoon were consistent

in their testimony that they were involved in some kind of business together, that the ₩50 million

advance was used in connection with that business and that the Debtor made at least some payments

to Ms. Yoon in connection with that business.  Thus, the Court finds that Ms. Yoon's and Mr. Han's

claim that the sole purpose of the transaction was to obtain a favorable exchange rate to be

contradicted by the evidence from both sides.

When Debtor described Table Two of Exhibit D-1A, Debtor testified that the first three

"profit payments" in *won* (small returns of $870, $1,435.22 and $522.17 totaling $2,827.39) were

paid to Ms. Yoon's brother, Baik.[86]   Debtor testified that the remaining seven payments on Table

Two (totaling $11,436) were paid to Ms. Yoon as profit on the sale of goods at what the Debtor

characterized as a 30% profit on wholesale transactions.[87]   These seven payments consisted of:

---

[81] Apr. 20, 2022 Trial Tr. 97:14-15, Dkt. No. 62.
[82] Apr. 20, 2022 Trial Tr. 93:12-18; 97:18-25; 99:9-10, Dkt. No. 62.
[83] Apr. 20, 2022 Trial Tr. 93:7-12, Dkt. No. 62.
[84] Apr. 20, 2022 Trial Tr. 98:20-21; 100:4-7, Dkt. No. 62.
[85] Apr. 20, 2022 Trial Tr. 99:19-25, Dkt. No. 62.
[86] Apr. 20, 2022 Trial Tr. 100:4-101:3, Dkt. No. 62.
[87] Apr. 20, 2022 Trial Tr. 101:4-15, Dkt. No. 62.  See also text associated with n.51, *supra*.

$5,000 in three checks payable to Ms. Yoon; $5,700 in two cash payments; and $736 in two checks payable to other entities.[88]    However, when the Court reviewed Debtor's proffered checks to support that claim, the Court discounted the two checks totaling $736 (as they were payable to other entities) and admitted into evidence only the three checks totaling $5,000, payable to Ms. Yoon and drawn on the account of JK International USA LLC.[89]

As noted above, the total dollar value of "profit payments" on Table Two was $14,263.39, as asserted by Debtor and confirmed by Ms. Yoon (notwithstanding the issue as to $736 in checks described above).[90]    Debtor acknowledged that "we did not decide on the amount of the money" but that the payment was determined on the basis of 30% profit "[b]ecause it's wholesale."[91]    The Court asked Debtor why, if Debtor repaid Ms. Yoon/Baik $14,263.39 on the $50,000 advanced, Debtor did not credit that amount against the $50,000 debt on her bankruptcy petition.[92]    Debtor explained that Ms. Yoon and she had not decided when the relationship would end:

Q    (By the Court) [W]as this money [$14,263.39] paid to Ms. Yoon Nam and her brother on account of the $50,000 investment or -- or something else?

A    Investing. It's the money to purchase the goods,  merchandise.

Q    Okay. So -- and this was the profit on the merchandise that was purchased?

A    After you send out the goods in wholesale you end up with a profit, right? Yeah.

Q    Okay. So what -- how was that money credited? Was it credited against the 50,000?

A    Can you say that one more time?

---

[88] Exs. D-1A and D-1C.  The three canceled checks numbered 1457, 1236, 1309 are each drawn on the bank account of JK International USA LLC; bear the number "115088277" in the reference line; and are payable to Ms. Yoon.
[89] Table Two, Ex. D-1A; Checks, Ex. D-1C; Apr. 20, 2022 Trial Tr. 116:10-120:6, Dkt. No. 62.  Debtor pressed the argument that she made at least one of the two checks totaling $736 payable to a company name at Ms. Yoon's request, but the Court had insufficient evidence to support that statement and did not admit into evidence the checks totaling $736.  Apr. 20, 2022 Trial Tr. 117:6-22; 120:8-14, Dkt. No. 62.
[90] Table Two, Ex. D-1A.
[91] Apr. 20, 2022 Trial Tr. 101:7-15, Dkt. No. 62.
[92] Apr. 20, 2022 Trial Tr. 101:16-102:14, Dkt. No. 62.

Q     In other words, I'm trying to understand, Ms. Cho, on your bankruptcy petition, right? You list the debt -- you list the debt to Ms. Yoon Nam of $50,000, and that's that $50,000 investment, right?

A     <u>Yes, because we promised to be in business together for 10 years, 20 years or how many ever years it would take, for example, because we did not decide on a date when our relationship will be over</u>.

Q     So what was the relationship between you and Ms. Yoon Nam? What -- were you partners? Were you –

A     At the beginning we were like dear friends. We would call each other older sister, younger sister. It was that kind of a relationship; and then after that, a business partner.

Q     Okay. And so then the 14,263.39 was, according to your testimony, was not credited to the 50,000, because you had an agreement to share profits?

A     So what I'd like to pinpoint here, she brought in $50,000 of merchandise. She should have taken $50,000 with her by going through this method. The one mistake I made was that I did not pick an end date . . . .[93]

Debtor complained that Plaintiffs pressed her to return the $50,000 only when Mr. Han got involved.[94] Debtor told Ms. Yoon that she could not convert the merchandise into money within a day: "It was said the time of six months will be given, but that was not the event."[95] Debtor testified that she stopped making "profit payments" after July 20, 2018 because she was unable to conduct her business after Mr. Han damaged her reputation in the Korean community.[96] Debtor testified (during cross-examination by Ms. Yoon on an interpolated question from the Court) that she eventually sold all the merchandise purchased with the money that Ms. Yoon gave her but at the same time could not account for the absence of any more "profit payments."[97] Toward the end

---

[93] Apr. 20, 2022 Trial Tr. 101:21-103:1, Dkt. No. 62 (emphasis supplied).
[94] Apr. 20, 2022 Trial Tr. 94:9-16; 122:25-123:4, Dkt. No. 62.
[95] Apr. 20, 2022 Trial Tr. 94:9-13, Dkt. No. 62.
[96] Apr. 20, 2022 Trial Tr. 103:5-104:5, Dkt. No. 62.
[97] That colloquy was:

Q     (By the Court)   I'm sorry. So the -- at the end of the day when you bought the 45 or $47,000 worth of merchandise were you able to sell the rest of that merchandise?

of Ms. Yoon's cross-examination of Debtor, the Court asked Debtor if she intended to repay the

$50,000 in a month:

> Q           (By the Court)  Okay. Ms. Cho, did you -- when you said to Ms. Yoon or I don't know if it was Bin Han or not, that you would pay back in a month, did you intend to pay back the $50,000 in a month?

> A           I don't want to lie to you. I wanted to do that, because she was like my sister and I was like a sister to her, too, and I wasn't really thinking about profiting myself. Yeah.[98]

Thus, in the end, Ms. Yoon's claim is essentially that the Debtor falsely represented to her

when the $50,000 would be repaid.  The Debtor herself candidly acknowledged that she told Ms.

Yoon she would repay her in a month, as set forth in her testimony cited above.  However, there

was no testimony or other evidence indicating that the Debtor made any misrepresentations or

omissions in connection with the initial ₩50 million advance.  Instead, the testimony and the

evidence confirm that Ms. Yoon made the ₩50 million advance to the Debtor, without Mr. Han's

knowledge, as a part of an ill-defined but completely consensual business relationship between the

Debtor and Ms. Yoon and to obtain a favorable exchange rate, and this Court so finds.  The Court

further finds Plaintiff's claim that the business relationship between the Debtor and Ms. Yoon was

separate from the agreement to provide to Ms. Yoon with a favorable exchange rate to be at least

---

A       Sold the money -- sold the merchandise and made this money.
Q       And that's the 14 -- you paid back $14,000, you said, to Ms. Yoon?
A       Yes.
Q       But what happened to the rest of it?
A       So from that time the business just got stopped.
Q       So no more sales, you're saying?
A       Yes.

Apr. 20, 2022 Trial Tr. 130:21-131:8, Dkt. No. 62.
[98] Apr. 20, 2022 Trial Tr. 133:2-9, Dkt. No. 62.  The Court also admitted into evidence for Debtor:  (i) Ex. D-2, an October 30, 2018 text message exchange in Korean from a telephone number that Mr. Han identifies belonging to the Korean Association vice president telling Debtor to pay the money owed; and (ii) Ex. D-3, a telephone photo of a criminal complaint that the Plaintiffs filed with the Ridgefield, New Jersey Police Department, both offered by Debtor as evidence of Plaintiffs' harassment (Apr. 20, 2022 Trial Tr. 104:11-106:24; 135:3-137:6, Dkt. No. 62).  Neither the Court nor the parties lingered on these Exhibits.

inconsistent with the evidence submitted at trial and at times contradicted by Ms. Yoon's own

testimony. Accordingly, the Court finds that the $50,000 (₩50 million) advance was part of the

business relationship between Ms. Yoon and the Debtor that was ill-defined, but nonetheless

consensual and voluntarily entered into by Ms. Yoon without Mr. Han's knowledge.

## VI.    LEGAL STANDARD AND ANALYSIS

### A. Exception to Discharge under 11 U.S.C. § 523(a)(2)(A)[99]

Ms. Yoon seeks to except from discharge on the grounds of fraud under 11 U.S.C.

§ 523(a)(2)(A) the $50,000 debt that Ms. Yoon alleges Debtor owes her. 11 U.S.C. § 523

("Exceptions to discharge") states in relevant part at § 523(a)(2)(A):

> (a) A discharge under section 727 . . . of this title does not discharge an individual
> debtor from any debt—
>
> (2) for money, property, services, or an extension, renewal, or refinancing of
> credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a
> statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A). "The overriding purpose of the Bankruptcy Code is to relieve debtors

from the weight of oppressive indebtedness and provide them with a fresh start." *In re Cohn*, 54

F.3d 1108, 1113 (3d Cir. 1995). Consistently with this purpose, the Court construes exception to

discharge claims "strictly against creditors and liberally in favor of debtors." *In re Reath*, 368 B.R.

415, 421 (Bankr. D.N.J. 2006) (finding that plaintiff failed to establish her claim to except from

discharge under 11 U.S.C. §§ 523(a)(2)(A) or (6) a debt arising from debtor's alleged breach of a

noncompete clause and entering judgment for debtor after trial).

---

[99] The Court presumes that the Plaintiffs are proceeding under 11 U.S.C. § 523(a)(2)(A) because no one has produced
a writing to support the terms of any agreement that Ms. Yoon and Debtor may have had.

To except a debt from discharge under 11 U.S.C. § 523(a)(2)(A) the plaintiff must prove that the debtor committed actual fraud, also called common law fraud. *Field v. Mans*, 516 U.S. 59, 70 (1995). The elements of common law fraud in this context have been generally described as:

(1) that the debtor made a material misrepresentation of a present or past fact;
(2) that the debtor knew of its falsity;
(3) that the debtor intended that the other party rely on the statement;
(4) that the other party justifiably relied on the statement; and
(5) that the other party suffered damages that were proximately caused by the false representation.

*In re DeBaggis*, 247 B.R. 383, 389 (Bankr. D.N.J. 1999) (not quoted but condensed from ten factors); *In re Giarratano*, 299 B.R. 328, 334 (Bankr. D. Del. 2003), *aff'd*, 358 B.R. 106 (D. Del. 2004). The plaintiff bears the burden of proving each element of the claim by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287-88 (1991). Establishing a claim for fraud under 11 U.S.C. § 523(a)(2)(A) requires proof of justifiable, not reasonable, reliance. *Field v. Mans*, 516 U.S. at 73-75.

Further, courts have construed the "to the extent obtained by" language in section 523(a)(2) to require the Debtor to have committed the fraudulent act at the inception of the transaction, i.e., when he or she received value from the creditor.[100] The creditor "must make a threshold showing that the alleged fraud existed at the time of, and has been the methodology by which, the money, property or services were obtained." *In re Hrabik*, 330 B.R. 765, 772-73 (Bankr. D.N.D. 2005) (dismissing a nursing home's 11 U.S.C. § 523(a)(2)(A) claim against its client's son, who did not obtain care for his mother by fraud but afterwards improperly used his power of attorney to divert funds that could have been used to pay for the nursing home services. *Id.* at 773); *In re Ingalls*,

---

[100] This statement is not meant to conflict with *Husky Int'l Elecs., Inc. v. Ritz,* 136 S.Ct. 1581, 1586 (2016), which does not apply to the facts of this case.

2010 WL 624089, at *3 (Bankr. D.N.J. Feb. 19, 2010) (section 523(a)(2)(A) "does not encompass situations, such as this, in which money was legitimately obtained and then misrepresentations occurred thereafter").   In *In re Ingalls*, the Court found that the debtor, an interior designer, did not obtain her plaintiff-clients' deposits by fraud.   *In re Ingalls*, 2010 WL 624089, at *3.   That the debtor subsequently misrepresented to her clients that she was unable to complete the contract because her brother had drained her bank account, when she actually had used the plaintiffs' funds to meet other expenses, did not create an exception to discharge under 11 U.S.C. § 523(a)(2)(A). *Id.*   Here, like the *Ingalls* case, the advances were legitimately obtained by the Debtor.   The only misrepresentations alleged by Ms. Yoon (or Mr. Han) were as to when the advances would be repaid. However, those alleged misrepresentations occurred in October of 2018, nine months after the advances were made in January of that same year. Thus, the alleged misrepresentations could not have induced the advances made months before. Moreover, they did not result in any damages to Ms. Yoon for the same reason — the advances had already been made. Accordingly, Ms. Yoon's 523(a) claim fails as it does not satisfy at least two of its critical requirements, i.e., a material misrepresentation that induced the advance or extension of credit and damages flowing from the alleged misrepresentation.

To a similar effect is *In re Thomas*, 255 B.R. 648, 652 (Bankr. D.N.J. 2000).   There, the debtor-contractor entered into a subcontract for structural drawings for the debtor's construction contract with the U.S. Navy.   Three months later, the debtor applied to the Navy for an initial progress payment that did not include payment to the subcontractor; the Navy thereafter made only partial payment on the initial progress payment and terminated the contract.   *Id.* at 651-52.   The Bankruptcy Court held that the debtor had not committed fraud in inducing the subcontractor to enter the contract or to provide the structural drawings, even though the debtor subsequently failed

to ask the Navy for funds to pay the subcontractor.  *In re Thomas*, 255 B.R. at 653.  *See also In re DeBaggis*, 247 B.R. at 386-87, 391 (no section 523(a)(2) claim available where any misrepresentation by the debtor to his counsel either postdated the original transfer of funds or was simply a promise to perform years later that plaintiff could not have justifiably relied upon).

Thus, to render a debt nondischargeable, the alleged fraud must have induced the plaintiff to make the extension of credit, money, services, or other property and that fraud must have caused the plaintiff to suffer damages.  As to Mr. Han, he acknowledged that he was not even aware of the advances at the time they were made by Ms. Yoon.  Nor was he involved in the transactions or discussions with the Debtor at the time the advances were made.  Mr. Han does not allege any fraudulent statements by the Debtor to him that induced him to make the advances because he was not involved at the time, so there simply were none made to him.  Thus, Mr. Han's section 523(a)(2) claims must fail as he has not proven the threshold requirement of such a claim; i.e., a fraudulent action that induced him to extend the advances to the Debtor.  As he acknowledges, he did not make the advances; Ms. Yoon did, without his knowledge.

As to Ms. Yoon, she has failed to satisfy her burden of proving that the Debtor made any fraudulent statements or omissions at the time the advances were made.  Instead, she ultimately acknowledged that the advances were made to the Debtor to obtain a favorable exchange rate (in fact, the "profits" were paid by the Debtor in dollars) and to invest with the Debtor in her business -- and that is what happened, according to both Ms. Yoon and the Debtor.  Thus, no fraud occurred at that time.

Plaintiff's principal claim is that Debtor failed to repay her when she made the demand to do so.  But that was not a fraud that induced Plaintiff to make the advances.  This was after-the-fact agreement to repay which the Debtor admittedly breached.  The Debtor's mere failure to

perform under an agreement as promised, without more, does not give rise to an exception to discharge claim under 11 U.S.C. § 523(a)(2)(A). *In re Hay Phat*, 623 B.R. 371, 380 (Bankr. E.D. Pa. 2021). That is so because "[o]therwise, almost all debts resulting from the failure to comply with a contract would be sufficient to establish nondischargeability, a result section 523(a)(2)(A) was not intended to create." *Id*. at 380. In *Hay Phat,* the court found, based on circumstantial evidence provided, that plaintiffs failed to establish that when the debtor signed an agreement to make installment payments on a judgment, he either did not intend to pay them or "should have known that he could not satisfy the terms of the Agreement." *Id.* at 381.

In the instant case, Ms. Yoon was never able to describe with adequate precision or detail the terms of her agreement with the Debtor, either through her testimony or through any documentation of any kind. Similarly, she was unable to specify what fraud the Debtor allegedly committed at the time the advances were made. Instead, Ms. Yoon testified that Debtor asked her for money on an urgent basis for Debtor's business; that Ms. Yoon and the Debtor did business together for a period of time and for which Ms. Yoon expected to receive and did in fact receive compensation; that Ms. Yoon wanted to "help [Debtor] out"; and that Ms. Yoon also thought that she would get a better exchange rate when Debtor returned the funds than she had when Ms. Yoon advanced them.[101] In fact, from April 16, 2018 through July 20, 2018, Debtor paid Ms. Yoon (or her brother) $14,263.39 on her $43,478.26 in advances to the Debtor (who expended $43,045.65 to obtain merchandise).[102] Ms. Yoon testified that Debtor offered to pay her $1,300 compensation (interest) until Debtor could return the principal, but it is not clear whether that conversation occurred before or after Ms. Yoon (and her brother) advanced the money,[103] and there was no other

---

[101] Apr. 20, 2022 Trial Tr. 79:22-80:17; 82:5-24; 83:4-21, Dkt. No. 62 (previously quoted or cited above).
[102] Table One and Table Two, Ex. D-1A.
[103] Apr. 20, 2022 Trial Tr. 81:1-5, Dkt. No. 62.

evidence, documentary or otherwise, supporting the $1,300 monthly payment.  Further, the $14,263.39 that was paid to Ms. Yoon over the course of three months was far more than $1,300 per month, on average.  In sum, Ms. Yoon was never able to identify any fraud or misrepresentation by the Debtor that induced Ms. Yoon to advance the money at the time those advances were made.

Ultimately, Ms. Yoon agreed when the Court asked her whether the transfer "was just an advance of funds with expectation of repayment."[104] She also repeatedly acknowledged that the funds would be used in Debtor's business, in exchange for consideration that neither side was able to describe with precision, but both sides acknowledged was paid to Ms. Yoon (or her brother) by the Debtor, as noted above.[105]   However, there was no proof of any fraudulent statement or omission made by the Debtor that induced Ms. Yoon to make the advance -- a critical and necessary element of her claim.  Instead, the Court finds that Ms. Yoon and the Debtor voluntarily entered into a vaguely defined business arrangement pursuant to which Ms. Yoon agreed to advance funds to the Debtor to invest in the Debtor's business in exchange for the Debtor's agreement to share her profits with Ms. Yoon and repay her at a favorable exchange rate, all without Mr. Han's knowledge or involvement.  That arrangement continued and was performed for several months, but fell apart when Ms. Yoon demanded immediate repayment in full, and the Debtor was unable to make that repayment, even though she expressed an admitted willingness to do so to Ms. Yoon months after the advances were made.  That is not a fraud, but rather a breach of an agreement that renders the underlying debt dischargeable in this bankruptcy case.  Thus, Plaintiffs' section 523(a)(2) claim fails.

---

[104] Apr. 20, 2022 Trial Tr. 83:19-21, Dkt. No. 62.
[105] Apr. 20, 2022 Trial Tr. 81:1-82:4; 99:21-101:3, Dkt. No. 62; Ex. D-1A.

B. <u>Denial of Plaintiffs' Application to Deny or Revoke Discharge under 11 U.S.C. § 727(a) or (d)</u>

As was noted previously, the Plaintiffs initially appeared to seek to deny or revoke the Debtor's discharge under section 727(a) or (d) on the ground that the Debtor's bankruptcy was fraudulent. The only "evidence" offered in support of that ill-defined claim was Ms. Yoon's conclusory and otherwise unsupported testimony that the Debtor continued to drive an expensive car, and/or bought cars for her relatives, bought a home, continued to do business (all allegedly in cash) and generally appeared to live well after her bankruptcy filing. However, no specifics or other proofs were provided in support of these extremely general, conclusory and not independently supported claims. There was no proof that the Debtor failed to disclose estate property or transferred or concealed any such property. A debtor is certainly not required to stop living in a home, driving cars, or working after filing for bankruptcy. Instead, the intent of the Bankruptcy Code is to allow the debtor a "fresh start," which discharges the debtor's debts and allows the debtor to begin anew without the weight of debt the debtor cannot afford to pay. Thus, Plaintiffs' weakly and vaguely asserted claims under section 727(a) or (d) are denied and dismissed for insufficient proof.

C. <u>Denial of Fees and Costs under 11 U.S.C. § 523(d)</u>

If the Court grants judgment to the Debtor on an 11 U.S.C. § 523(a)(2) Complaint, 11 U.S.C. § 523(d) requires the Court to consider awarding fees and costs to the Debtor. That section provides as follows:

> (d) If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

32

11 U.S.C. § 523(d).

The Court will not award any attorney's fees or costs to the Debtor, as it finds that such an award would be unjust in the circumstances of this case.  Ms. Yoon, who spoke little English, proceeded *pro se*, with little understanding of the law and in the good faith belief that Debtor should be required to repay her.  An award of attorney's fees would not only be unfair and unjust, but also potentially cause even further unnecessary and inequitable harm and grief to Ms. Yoon.  Further, the Court finds that this was a business rather than consumer debt.  As a result, section 523(d) does not apply in any event.

## V.  CONCLUSION

For the reasons set forth above, the Court denies Plaintiffs' claim to except from discharge under 11 U.S.C. §523(a)(2)(A) the debt in the amount of $50,000 that Plaintiffs claim Debtor owed them. The Plaintiffs also appear to have sought at least initially to deny or revoke Debtor's discharge under 11 U.S.C. § 727(a) or (d), but did not press or much less prove that claim at trial. Accordingly, the Court finds that Plaintiffs failed to meet their burden of proof on that claim.  The Court dismisses the Complaint in its entirety, without costs to either party.

A conforming Order is being entered contemporaneously with this Opinion.


Dated:  July 15, 2022

*Vincent F. Papalia*

VINCENT F. PAPALIA
United States Bankruptcy Judge